**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| HORTON ARCHERY, LLC | Case No. 5:09-CV-01604 |
| Plaintiff, | |
| | Judge Sara Lioi |
| v. | |
| | |
| AMERICAN HUNTING | **PLAINTIFF'S MEMORANDUM IN** |
| INNOVATIONS, L.L.C. a/k/a KEMPF | **OPPOSITION TO** |
| CROSSBOWS a/k/a RDT ARCHERY; J | **DEFENDANTS' MOTION TO** |
| & S R.D.T. ARCHERY, INC.; | **DISMISS OR, IN THE** |
| SCORPYD CROSSBOWS, AND | **ALTERNATIVE, TO TRANSFER** |
| JAMES J. KEMPF an individual | |
| | |
| Defendants | |

## I.  Introduction

This is a patent case, involving United States Patent No. 7,363,921 ("the '921 patent"), which relates to crossbows.  Horton Archery, LLC ("Horton Archery") brought this action under the Declaratory Judgment Act, seeking determination of patent invalidity and noninfringement as set out fully in the Complaint.  ECF Doc. 1.

The Defendants, collectively referred to as "Kempf," have moved to dismiss this case or, in the alternative, to transfer.[1]  But, as presented more fully below, this case should be heard here in the United States District Court for the Northern District of Ohio because: (1) the first-to-file rule does not apply, given the absence of "substantial identity" between (a) the parties (Horton Archery and Horton Manufacturing Company, LLC) and (b) the issues before this Court and those before the United States District Court for the Southern District of Iowa; (2) even assuming *arguendo* that the first-to-file

---

[1] Since Kempf's Motion was not a dispositive one, its memorandum in support should not have exceeded the page limitation (15 pages) given in Local Rule 7.1(f).

rule does apply, equitable balancing of all of the circumstances favors allowing this

action to proceed; and (3) the purpose of the Declaratory Judgment Act is served by

proceeding with this case, and this Court should not dismiss or transfer the case.

**II.  Facts**

    **A.  Horton Archery, The Defendants, and Horton Manufacturing Company,
LLC**

    Plaintiff Horton Archery is in the business of designing, manufacturing and

selling archery equipment including crossbows, compound bows, and related accessories.

Exhibit ("Ex.") 1, Horton Archery website, and Ex. 2, Ryan Callaghan Decl., ¶ 4.  Horton

Archery recently acquired substantially all of the assets of Horton Manufacturing

Company, LLC ("Horton Manufacturing").  Ex. 2, ¶ 5.  "Horton" is the crossbow

industry's oldest, and arguably, most widely known trade name and is a name associated

with high-performance hunting crossbows.  Ex. 1 and Ex. 2, ¶ 6.

    Horton Manufacturing is *not a party* to this lawsuit and is a completely different

business entity from Horton Archery.

    Horton Archery is a limited liability company organized under the laws of

Delaware (Ex. 4), and is registered in Ohio as a foreign limited liability company.  Ex. 2,

¶ 7.  Before June 17, 2009, Horton Archery was known as WildComm-Horton Partners,

LLC.  Ex. 5 and Ex. 2, ¶ 8.  The Defendants (collectively referred to as "Kempf")

previously filed a lawsuit against Horton Manufacturing in the Southern District of

Iowa.[2]  In that lawsuit, Kempf alleged, among other things, infringement of the '921

---

[2] As Kempf admits, its originally filed Complaint was lodged on April 29, 2009, but named the wrong party
(Horton Manufacturing Company, Inc.) as the defendant.  Kempf filed an Amended Complaint on May 14,
2009 against the correct defendant, Horton Manufacturing Company, LLC.  Kempf's Motion, ECF Doc. 14
at 4.

patent by Horton Manufacturing's manufacture and sale of a certain crossbow.  ECF Doc. 3 in Case No. 4:09-CV-00166 ("Iowa Litigation"), p. 5.

In January 2009, before Kempf instituted the suit against Horton Manufacturing, Horton Manufacturing was forced into receivership.  Ex. 6, docket listing in *Comerica Bank v. Horton Manufacturing Company, LLC fka Horton Acquisition LLC, Monroe County, Ohio case no. 2009-022.*

### B. The Sale of Substantially All of Horton Manufacturing's Assets, Including Its Name

Under the supervision of the Court of Common Pleas of Monroe County, Ohio, a court-appointed Receiver arranged the sale of substantially all of Horton Manufacturing's assets to Horton Archery.[3]  That sale was authorized by Monroe County Common Pleas Judge Julie Selmon.  Ex. 7.

The Amended Asset Purchase Agreement governing the sale of the assets shows that the "Purchased Assets" included:

> (h) To the extent the same are validly assignable, all **Intellectual Property**, shop rights, formulations, recipes, license, internet property, websites, domain names, marketing assets, customer lists, technical know-how, trade secrets, designs, goodwill, telephone and yellow page listings, tooling and co-development rights and rights of Horton which are used or related to the Horton Business (collectively the "Horton Intangible Property").

Ex. 8, Amended and Restated Asset Purchase Agreement at p. 5 (emphasis added on "Intellectual Property').

The "Intellectual Property" referenced as a purchased asset is a defined term under the Amended and Restated Asset Purchase Agreement, and included, *inter alia*:

---

[3] As of the date of the Report of Sale (June 12, 2009), the buyer Wildcomm-Horton Partners, LLC was known as Horton Archery, LLC.  Ex. 2, ¶¶, 5 and 8, and Ex. 5.

(ii) all trademarks, service marks, trade names (including without limitation the name of "Horton Mfg. Co. LLC"), service names, brand names, all trade dress rights, logos, Internet domain names and corporate names and general intangibles of a like nature, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof (collective, "Marks").

*Id*. at pp. 3-4.

Thus, Horton Archery paid for and acquired the right to use the appellation "Horton," which again, is widely recognized in the industry.

Notably, Kempf was aware of the Monroe County receivership action before the sale to Horton Archery was finalized and approved by the court. This is evidenced by the fact that Kempf entered an objection to the Receiver's proposed sale on June 2, 2009. Ex. 9, Objection of [Defendants Kempf], Ex. 2, ¶ 23. The fact of this objection is even evident from the materials filed by Kempf in support of the subject motion. ECF Doc. 14 Ex. D at p. 4.

Thus, it is beyond dispute that Kempf was aware of the identity of the buyer of Horton Manufacturing's assets *over a month before* this suit was filed on July 14, 2009. Kempf's objection to the Receiver's proposed sale establishes specific actual knowledge of WildComm-Horton Partners, LLC. And as already discussed, WildComm-Horton Partners, LLC did nothing more than change its name to Horton Archery, LLC on June 17, 2009. This raises doubts about the veracity of Kempf's claim that "[p]rior to Horton Archery's commencement of this action, Defendants had no knowledge of Horton Archery." ECF Doc. 14 at 5, *see also* ECF Doc. 14 Ex. A ¶ 19. In any event, Kempf had knowledge that substantially all of Horton Manufacturing's assets were sold to Horton Archery. Despite this actual knowledge, Kempf took no steps toward charging Horton Archery with infringement until it filed its Motion Seeking Leave in the Iowa litigation

- 4 -

over a month after this suit was filed.  ECF Doc. 14 Ex. G, filed August 31, 2009, Ex. 2,

¶ 24.  Again, this suit was filed on July 14, 2009.  ECF Doc. 1.

### C.  Ownership of Horton Archery and its Executive Management

Horton Archery is owned approximately 50% by Gregg Ritz[4] of Wild

Communications, LLC and approximately 50% by TGV Partners, LLC.[5]  Ex. 2, ¶ 18.

Neither Gregg Ritz, nor Wild Communications nor TGV Partners had any ownership

interest in Horton Manufacturing.  Ex. 2, ¶ 19.  Rather, prior to the Receiver's

appointment in the Monroe County action, "Horton [Manufacturing Company, LLC]

operated under the control of the principals of The Anderson Group, LLC, a private

equity firm, which purchased Horton in a highly leveraged buy-out transaction in

December 2006."  Ex.10, Amended Motion of Receiver at p. 3.

Horton Archery's executive management team includes Gregg Ritz as CEO (chief

executive officer), and Mike Garland as CFO (chief financial officer).  Ex. 2, ¶ 9.

Neither Gregg Ritz nor Mike Garland was affiliated with Horton Manufacturing in any

way.  Ex. 2, ¶ 9.  Horton Archery is currently in search of a permanent COO (chief

operating officer) and the COO of Horton Manufacturing is temporarily in this position

---

[4] Gregg Ritz is the owner of Wild Communications, LLC, the former President and CEO of
Thompson/Center Firearms and a renowned professional hunter and accomplished executive.  During his
10-year tenure at Thompson/Center Firearms, Mr. Ritz developed T/C into the dominant black powder
firearm producer in the world.  Ex. 2, ¶ 20.  Wild Communications, LLC is a Delaware limited liability
company and is a recognized leader in outdoor marketing and media, developing dynamic marketing
programs for professional hunters and producing, managing and representing several top rated hunting
television shows on the Outdoor Channel and ESPN networks.  Ex. 2, ¶ 21.
[5] TGV Partners, LLC is a California limited liability company and is a private equity firm that focuses on
investing in established companies in the middle market.  Ex. 2, ¶ 22.  The Receiver in the Monroe County
action noted that "TGV [Partners] is a private investment firm, which invests the firm's own capital
resources through growth capital investments in established middle-market manufacturing businesses.  The
principals of TGV [Partners] have invested in excess of $500 million of private capital in corporate
transactions comparable to the Horton transaction…"  Ex.10, Amended Motion of Receiver at pp. 5-6, n. 4.

until September 30, 2009.  Ex. 2, ¶ 12.  After September 30, 2009, no senior management

from Horton Manufacturing will be an employee of Horton Archery.  Ex. 2, ¶ 11.

### D.  The Iowa Litigation

Kempf's Iowa lawsuit was originally filed against Horton Manufacturing, and

presented a host of claims allegedly related to the conduct of Kempf and Horton

Manufacturing.  In addition to patent infringement, Kempf alleged causes of action under

state-law theories including "Breach of Contract," "Negligent Misrepresentation,"

"Fraudulent Misrepresentation," "Conversion," "Breach of Fiduciary Duty," and

"Tortious Interference."  ECF Doc. 3 in Iowa Litigation.  All of these counts relate to a

lengthy series of facts alleged in the Amended Complaint.  *Id*. at pp. 2-5.

When Kempf filed the Second Amended Complaint on August 31, 2009 to name

Horton Archery as a party, Kempf repeated the statement of facts and causes of action as

against Horton Manufacturing, but had much less to say about Horton Archery.  ECF

Doc. 9 in Iowa Litigation.  Compare, pp. 1-14 with pp. 14-18.  Regarding the only cause

of action (patent infringement) asserted against Horton Archery, Kempf simply alleged:

> 12.      To the best of Plaintiff's information and belief, Horton Archery
> after the purchase of Defendant Horton Manufacturing's assets has
> continued to use, market, and manufacture the subject 921 crossbow
> technology and offer same for sale, including in Iowa.

ECF Doc. 9 in Iowa Litigation at pp. 16-17.  Despite alleging so little against

Horton Archery in the Second Amended Complaint, nearly all of Kempf's

Memorandum in Support (ECF Doc. 14) is spent recounting the factual

allegations against *Horton Manufacturing* and blurring the line as to which facts

relate to Horton Archery and which relate to Horton Manufacturing.[6]

Kempf's Second Amended Complaint demonstrates both that (1) Kempf

regards Horton Archery as a distinct business entity from Horton Manufacturing,

and that (2) Kempf understands that different facts must be presented to support

the contentions against Horton Manufacturing than the contentions against Horton

Archery.

In any event, proceeding with this case does nothing to prejudice Kempf's

claims against Horton Manufacturing – Kempf is free to go forward against

Horton Manufacturing in Iowa, and possibly collect damages.

## III. Argument

### A.  Subject Matter Jurisdiction *Does Exist* Under the Declaratory Judgment Act

Kempf contends that this Court should dismiss this case "due to lack of subject

matter jurisdiction pursuant to Rule 12(b)(1)."  ECF Doc. 14 Motion at p. 1.  In the

Memorandum in Support, Kempf elaborates on this theory, arguing that Horton

Archery's complaint *sub judice* "does not satisfy either the 'case and controversy'

requirement of Article III of the Constitution or the 'actual controversy' requirement of

---

[6] For instance, Kempf's section on "The Iowa Litigation" at pp. 2-5 relates almost entirely to Kempf's dealings with Horton Manufacturing, and how Mr. Kempf invented the technology, filed his patent application, tried to negotiate with Horton Manufacturing, and subsequently discovered and purchased certain crossbows.  None of these facts relate to the dispute between Kempf and Horton Archery.  Horton Archery was not a party to the "Non-Complete/Non-Disclosure Agreement" [sic] discussed in Kempf's brief.  ECF Doc. 14 at p. 2.  Horton Archery did not manufacture or sell the crossbows that Mr. Kempf purchased in 2008 (ECF Doc. 14 at 3), as Horton Archery had not yet purchased substantially all of the assets of Horton Manufacturing.  Moreover, at p. 13, Kempf suggests that they would "still have to bring [the] claims for infringement, breach of contract and tort claims against Horton Archery, as the successor to Horton Manufacturing…"  This is inconsistent with Kempf's Second Amended Complaint filed in Iowa which acknowledges that the potential claims against Horton Archery are limited to *infringement*, and only that infringement which began after Horton Archery's acquisition of substantially all of Horton Manufacturing's assets.

the Declaratory Judgment Act." *Id*. at 1. This argument must be rejected for several reasons, the most obvious of which is that Kempf's Second Amended Complaint in Iowa *names Horton Archery as a defendant*, thereby showing that there is an actual controversy between the parties over the subject matter raised in this lawsuit.

Determination of whether there is an actual controversy in a patent action generally entails a two part inquiry: (1) whether the declaratory plaintiff is preparing to or has acted in a way that the patentee asserts infringes the patent; and (2) whether the patentee has created a reasonable apprehension of suit for infringement in the declaratory plaintiff. *Nartron Corp. v. Quantum Research Group, Ltd.,* 473 F. Supp. 2d 790, 796 (E.D. Mich. 2007), *citing, Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735-36 (Fed. Cir. 1988); *See also, Serco Services Co. v. Kelley Co.,* 51 F.3d 1037, 1038 (Fed. Cir. 1995). Again, Kempf has alleged patent infringement against Horton Manufacturing based on its manufacture and sale of a particular type of crossbow ("accused product"). ECF Doc. 3 in Iowa Litigation, filed May 14, 2009. In June 2009, Horton Archery acquired substantially all of Horton Manufacturing's assets. Since that time, Horton Archery has continued to manufacture and sell the accused product. Ex. 2, ¶ 12. Thus, an actual controversy is easily found: (1) Horton Archery has acted in a way that Kempf asserts infringes its patent, and (2) by suing Horton Manufacturing over the accused product, and because Horton Archery now manufactures and sells the accused product, Kempf has created in Horton Archery a reasonable apprehension of suit for infringement.

**B.  Neither the Parties Nor the Issues Substantially Overlap, So the Iowa
   Litigation Is Not Entitled To First-To-File Precedence**

    **1.  The First-to-File Rule**

The first-to-file rule provides that when actions involving nearly identical parties
and issues have been filed in two different district courts, the court in which the first suit
was filed should generally proceed to judgment.  *Elite Physicians Services, LLC v.
Citicorp Credit Services, Inc.,* 2007 WL 1100481 at *3 (E.D. Tenn.)  Therefore, in
determining whether the rule applies, a court must analyze whether the parties and issues
substantially overlap.  *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686,
688 (E.D. Tenn. 2005) ("The crucial inquiry is whether the parties and issues
substantially overlap." (internal citations omitted))

Parties have been found to "substantially overlap" in the event of privity or
affiliation.  *Elite Physicians Services, LLC*, 2007 WL 1100481 at *3, citing Hayes
Lemmerz Int'l, Inc. v. Epilogics Group,* 2006 WL 2571987 at *2 (E.D. Mich.) and
*Supervalu, Inc. v. Exec. Dev. Sys*, 2007 WL 129039 at *1 (D. Idaho).

Issues have been found to "substantially overlap" if "'the overall content of each
suit is not very capable of independent development.'"  *Elite Physicians Serv., LLC*, 2007
WL 11800481 at *3, citing, Gen. Prods. Mach. Shop, Inc. v. Systematic Inc.,* 2006 WL
2051737 at *2 (D. Idaho) *and Mann Mfg, Inc. v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir.
1971).

Here, the parties do not substantially overlap.  Kempf's action in Iowa was
previously filed against Horton Manufacturing.  As established, Horton Manufacturing is
a distinct business entity from, and unaffiliated with, Horton Archery.  There is no privity
between the two.  The allegations in Kempf's Second Amended Complaint bear this out –

- 9 -

Kempf makes allegations against both Horton Manufacturing and Horton Archery, but none of Kempf's allegations against Horton Archery are for the conduct of Horton Manufacturing.

Nor do the issues substantially overlap.  In Iowa, Kempf has asserted against Horton Manufacturing a host of state law claims (including breach of contract, negligent misrepresentation, fraudulent misrepresentation, conversion, breach of fiduciary duty, and tortious interference).  These charges have factual and legal bases that are entirely unrelated to Kempf's allegation against Horton Archery for patent infringement.  The issues raised by this case (all relating to the patent) are so unrelated to the state-law claims brought against Horton Manufacturing that they cannot be said to "substantially overlap."

Accordingly, this Court should proceed to judgment.

### 2.  Impact of the First-To-File Rule on a Court's Exercise of Discretion: The First-Filed Court

The first-filed court should determine all the dispositive issues in a case, including whether to retain or relinquish jurisdiction.  *Elite Physicians Serv*, LLC, 2007 WL 1100481 at *4.  When determining whether to retain or relinquish jurisdiction where claims involve patents, Federal Circuit law controls with regard to the question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement.  *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *See also, Laboratory Corp. of America Holdings v. Chiron Corp.,* 384 F.3d 1326, 1330 (Fed. Cir. 2004); *Technical Concepts v. Zurn Indus.*, 2002 WL 31027962 at * fn 7 ("*Wilton* did not overrule, or even discuss,

- 10 -

*Genentech's* holding that the first-filed rule should be applied in patent cases" and *Taylor Corp. v. Microthin.com, Inc.,* 2001 WL 1640063 at *2 (D. Minn.).   Federal Circuit precedent provides that a first-filed declaratory judgment action that can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, absent sound reason for a change of forum, is entitled to precedence as against a later-filed patent infringement action.  *Nartron Corp..,* 473 F. Supp. 2d at 796, *citing, Genentech, Inc..,* 998 F.2d at 938.  Stated otherwise, even if the first-filed action is declaratory, it is preferred unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.  *Serco*, 51 F.3d at 1039. Notably, whether a party intended to preempt another's infringement suit, alone, does not warrant an exception to this general rule.  *Buztronics, Inc. v. Theory3, Inc.*, 2005 WL 1113873 at *5, citing *Serco,* 51 F.3d at 1040 ("'The creation of this court [Federal Circuit] has in large part tempered the impact of traditional forum shopping in patent cases, so the stake of a race to the courthouse are less severe.'")

Here, the first-filed action is the declaratory judgment action filed in this Court. No previously-filed lawsuit included both Horton Archery and Kempf.  This case can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding.  Thus, this first-filed suit is entitled to precedence as against Kempf's later-filed patent infringement action (as contained in the Second Amended Complaint filed in Iowa).

### 3.   Impact of the First-To-File Rule on a Court's Exercise of Discretion: The Second-Filed Court

The second-filed court decides only whether to transfer the duplicative suit, issue a stay, or dismiss the complaint.  *Elite Physicians Services, LLC*, 2007 WL 1100481 at

*4.  In choosing one of the three options, the second-filed court engages in an equitable balancing, applying the same factors that apply to the decision of whether transfer is appropriate under § 1404(a).  *Id.; See also, Plating Resources, Inc. v. UTI Corp.,* 47 F. Supp. 2d 899, 904 fn 9 (N.D. Ohio 1999)("While the *Alltrade* court cautioned that the respective convenience of the two courts normally 'should be addressed to the court in the first filed action' rather than to the court in the later-filed action, the court observed that '[i]n appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses.'" (internal citations omitted))  The factors a district court must consider in ruling on a motion to transfer under § 1404(a) closely track those the Federal Circuit identified in *Genentech* as possibly warranting exceptions to the general rule in favor of the first-filed action in patent cases, namely the convenience and availability of witnesses, absence of jurisdiction over all necessary or desireable parties, the possibility of consolidation with related litigation and considerations relating to the real party in interest.  *Buztronics, Inc.,* 2005 WL 1113873 at *4 (S.D. Ind.), citing *Genentech*, 998 F.2d at 938.

    Even if this Court were not where the first action was filed, the factors considered under a transfer analysis under § 1404(a) militate in favor of this suit being allowed to proceed.  Horton Archery is based in Tallmadge, Ohio, and so the convenience of Horton Archery's witnesses supports keeping the case in this Court.  Since a portion of the manufacturing of Horton Archery's crossbows occurs in Tallmadge, manufacturing witnesses are located in this judicial district.  Ex. 2, ¶ 14.  And, the sales and marketing employees responsible for selling and promoting Horton Archery's products are based in Tallmadge, and their documents and records are kept in Tallmadge.  Ex. 2, ¶¶ 15 and 16.

Even with respect to the witnesses which might possibly be called from TGV Partners or Wild Communications, the fact that they would have to travel from out of state does not support hearing the case in Iowa – because in either case, a similar amount of travel would be involved. But as far as day-to-day employees are concerned, this Court is more convenient for Horton Archery's witnesses. Moreover, possible third-party witnesses could include former employees of Horton Manufacturing who worked at Horton Manufacturing's facilities in Tallmadge. Ex. 2, ¶ 17. In addition, the engineering drawings of the product in issue are maintained in Tallmadge. Ex. 2, ¶ 13. Furthermore, Horton Archery is the real party in interest in its patent dispute with Kempf. Horton Archery is not the real party in interest to Kempf's claims against Horton Manufacturing, and no good consideration is served by making Horton Archery travel to a distant court for unrelated litigation.

**C. The District Court for the Northern District of Ohio Should Hear This Case**

The Declaratory Judgment Act exists precisely for situations such as this and Horton Archery's lawsuit should be heard by this Court. The Federal Circuit, whose law controls in this patent case, has said that the purpose of the Declaratory Judgment Act in patent cases "is to provide the allegedly infringing party relief from *uncertainty* and *delay* regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (emphasis added). The Federal Circuit has consistently acknowledged such a purpose in the Declaratory Judgment Act:

> [A] patent owner ... attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.... Before the [Declaratory Judgment] Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to

> grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; *they could clear the air by suing for a judgment that would settle the conflict of interests*.

*Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005), quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed.Cir.1988) (citation omitted, emphasis added).

Even though the word "may" in the language of 28 USC § 2201 means that a district court has a degree of discretion when deciding whether to declare rights in a declaratory judgment action, the Federal Circuit explicitly instructs that a district court "should decide whether hearing the case would 'serve the objectives for which the Declaratory Judgment Act was created.'  When these objectives are served, dismissal is rarely proper."  *Micron Tech., Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008), citing *Capo, Inc. v. Dioptics Med. Prods.*, Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004) (internal citation omitted).  And with support from the Supreme Court, the Federal Circuit has even stated that "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action."  *Capo Inc.*, 387 F.3d at 1355, citing *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962).  *See also*, 10B Charles A. Wright et al., *Federal Practice and Procedure* § 2759 (3d ed.): "The discretion of the trial court is not absolute, however, and the court cannot refuse to entertain a declaratory-judgment action on a whim."

Horton Archery brought the present lawsuit to achieve prompt certainty regarding its legal rights.  *Goodyear Tire*, 824 F.2d at 956.  As already discussed, Horton Archery manufactures and sells certain crossbows that have been accused of infringing Kempf's

'921 patent. Rather than increase its potential liability exposure through continued manufacturing and sales, or cease its manufacturing and sales activities, Horton Archery filed the present lawsuit to clear the air and get a judgment on both the validity of the '921 patent and whether any of Horton Archery's products infringe that patent. *Electronics for Imaging*, 394 F.3d at 1346, *see* ECF Doc. 1 at ¶A. The facts of this case fit perfectly with the purpose of the Declaratory Judgment Act, so this Court should hear the case, and dismissal would be improper. *Micron Tech.*, 518 F.3d at 902.

## IV. Conclusion

This Court has jurisdiction to hear the patent dispute between Horton Archery and Kempf. This is the first-filed action naming both Horton Archery and Kempf, so this case is entitled to precedence over Kempf's later-filed complaint in Iowa against Horton Archery. Equitable considerations militate in favor of this suit being allowed to proceed, serves the purpose of the Declaratory Judgment Act.

Additionally, because this is the first-filed action naming both Horton Archery and Kempf, Kempf should be enjoined from pursuing the Iowa litigation, as requested in the Complaint. ECF Doc. 1 at ¶B. This is necessary to avoid prejudice to Horton Archery that may result solely from its legal use of the name "Horton," in view of the breach of contract and tort claims Kempf has alleged in the Iowa litigation.

Respectfully submitted,


/s:/Ray L. Weber
Edward G. Greive        (0018243)
Ray L. Weber            (0006497)
Laura J. Gentilcore     (0034702)
Derek J. Somogy         (0082338)
Renner, Kenner, Greive, Bobak, Taylor & Weber
400 First National Tower
Akron, Ohio 44308
Telephone:  (330) 376-1242
Facsimile: (330) 376-9646

Attorneys for Plaintiff,
Horton Archery, LLC


## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2009, the foregoing Plaintiff's

Memorandum In Opposition To Defendants' Motion to Dismiss Or, In The Alternative,

To Transfer was filed electronically. Notice of this filing was sent to counsel of record

through the Court's electronic filing system. Access to this document also can be

obtained through the Court's electronic system.

/s:/ Derek J. Somogy

Derek J. Somogy