UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **HORTON ARCHERY, LLC** | ) | **CASE NO. 5:09CV1604** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **AMERICAN HUNTING INNOVATIONS,** | ) | |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This memorandum opinion and order arises out of the motion of Defendants American Hunting Innovations, LLC, also known as Kempf Crossbows, also known as RDT Archery ("American Hunting"), J & S R.D.T. Archery, Inc. ("J&S"), Scorpyd Crossbows ("Scorpyd"), and James J. Kempf ("Kempf") (collectively, "Defendants") to dismiss, or alternatively, to transfer, the complaint of Plaintiff Horton Archery, LLC ("Horton Archery"). (Doc. No. 14.) For the following reasons, Defendants' motion to dismiss is **GRANTED**.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Except where noted, the following facts are undisputed and are taken from Plaintiff's complaint. Plaintiff Horton Archery is a Delaware LLC with its principal place of business in Tallmadge, Ohio. Defendant American Hunting is an Iowa LLC with its principal place of business in Coralville, Iowa. Defendant J&S is an Iowa corporation with its principal place of business in Coralville, Iowa. Defendant Scorpyd is a trademark for a line of crossbow products made and sold by American Hunting. Defendant Kempf is an Iowa resident, and the majority owner and CEO of both American Hunting and J&S.

On January 5, 2005, Kempf filed an application for a patent covering "a crossbow having an increased powerstroke and reduced noise" which is facilitated in part by "locating string guides at least partially forward and rearward of the ends of the limbs." (Doc. No. 1-1 at p.1.) Between March 2006 and April 2007, Defendants and non-party Horton Manufacturing Company, LLC ("Horton Manufacturing") engaged in negotiations, ultimately unsuccessful, concerning Horton Manufacturing's interest in licensing the crossbow technology covered by the '921 patent. (Doc. No. 14 at p. 8.) On April 29, 2008, United States Patent No. 7,363,921 (the "'921 patent") was issued to Kempf. (Doc. No. 1-1 at p.1.) In August 2008, Kempf purchased, from two different sources, crossbows manufactured by Horton Manufacturing that he suspected incorporated technology covered by the patent. (Doc. No. 14 at pp. 8-9.)

In early 2009, Horton Manufacturing entered into receivership. (Doc. No. 15-6, *Comerica Bank v. Horton Mfg. Co., LLC, fka Horton Acquisition LLC*, Case No. CV-2009-022, Monroe County (Ohio) Court of Common Pleas (January 30, 2009). On April 29, 2009, Defendants filed a lawsuit against Horton Manufacturing in the Southern District of Iowa, Case No. 4:09-CV-166 ("the Iowa litigation"), alleging, among other things (and relevant here), infringement of the '921 patent. (Iowa litigation, Doc. No. 1.) On May 14, 2009, Defendants filed a first amended complaint in the Iowa litigation. (Iowa litigation, Doc. No. 3.) On June 12, 2009, while under the supervision of the Monroe County court, a sale of substantially all of Horton Manufacturing's assets to WildComm-Horton Partners, LLC, nka Horton Archery, was approved.[1] (Doc. No. 15 at p. 3.)

---

[1] WildComm-Horton Partners, LLC acquired Horton Manufacturing's assets on June 12, 2009. (Doc. No. 14-5; Doc. No. 15-2 at ¶ 5.) On June 17, 2009, WildComm-Horton Partners filed a certificate of amendment of certificate of formation with the Delaware Secretary of State Division of Corporations legally changing its name to Horton Archery, LLC. (Doc. No. 15-5.)

2

On July 14, 2009, Horton Archery, at that date not a party to the Iowa litigation, filed a complaint in this Court seeking declaratory relief relating to non-infringement and invalidity of the '921 patent, the enjoinment of Defendants from initiating or threatening patent infringement litigation against Horton Archery, and the enjoinment of Defendants from publishing false or misleading descriptions or representations of fact regarding either Defendants' own, or Horton Archery's, products (the "Ohio litigation"). (Doc. No. 1.) On August 31, Defendants filed a motion for leave to file a second amended complaint naming Horton Archery as a defendant in the Iowa litigation. (Iowa litigation, Doc. No. 7.) On that same day, in this Court, Defendants filed the motion dismiss before the Court. (Doc. No. 14.) On September 1, 2009, the Iowa court granted Defendants' motion for leave to file a second amended complaint, and the second amended complaint was filed on September 4. (Iowa litigation, Doc Nos. 8, 9.) On September 14, Horton Archery filed an opposition to Defendants' motion to dismiss this action. (Doc. No. 15.) Defendants filed a reply on September 28. (Doc. No. 17.) Horton Archery thereafter filed a motion for leave to file a sur-reply (Doc. No. 17), which Defendants opposed via a motion to strike.[2] (Doc. No. 18.)

Against this backdrop, Defendants' motion to dismiss is ripe for decision.

## II.     DISCUSSION

Defendants advance two arguments in support of their motion dismiss. First, Defendants argue that Horton Archery's complaint should be dismissed under the first-to-file rule. Alternatively, Defendants argue that this Court should decline to entertain Horton Archery's complaint under the Declaratory Judgment Act. Because this Court concludes that Horton

---

[2] Finding Horton Archery's motion to file a sur-reply well-taken, said motion is **GRANTED**. Defendants' motion to strike is therefore **DENIED**. The arguments contained within the motion in rebuttal to the sur-reply, however, will be considered by the Court, as well.

3

Archery's complaint should be dismissed under the first-to-file rule, there is no need to address Defendants' second theory.

**A.     The First-to-File Rule**

The first-to-file rule embodies the well-established principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. M'Iver*, 22 U.S. 532, 535 (1824). Underlying this principle is the desire to "encourage[] comity among federal courts of equal rank." *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004) (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)). The Fifth Circuit has explained the rationale behind the first-to-file rule, stating, "[c]ourts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999).

"Under the principle of comity, a district court properly may dismiss a case because of a previously filed case pending before another district court that presents the same issues and involves the same parties." *Carter v. Bank One*, 179 Fed. App'x. 338, 340 (6th Cir. 2006) (citations omitted). After deciding that the first-to-file rule applies, disposition of the second-filed action is within the court's discretion. *Smith v. Sec. Exch. Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997). Courts may dispense with the rule for equitable reasons or when special circumstances are present, including bad faith, anticipatory suits, forum shopping or significant policy considerations. *Nartron Corp. v. Quantum Research Group, Ltd.*, 473 F. Supp. 2d 790, 795 (E.D. Mich. 2007).

The first-to-file rule does not require that the issues and parties in the two actions be identical. Indeed, the "rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (internal quotations and citations omitted). *See also Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999) (citing *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984) and *Barber-Greene Co. v. Blaw-Knox Co.*, 239 F.2d 774, 778 (6th Cir.1957)) (holding pursuant to the first-to-file rule, when suits involving substantially the same issues and parties are filed in courts of concurrent jurisdiction, the court in which the first action was filed should proceed to judgment).

1.   **Which Lawsuit is the First-Filed Action?**

Before analyzing whether or not application of the first-to-file rule is appropriate in this case, the Court must determine which of the Iowa action or this Ohio action was first-filed. As stated earlier, the Iowa litigation was filed by Defendants on April 29, 2009, but Horton Archery was not named as a defendant in that action until the second amended complaint was filed, on September 4. Horton Archery filed this lawsuit on July 14, 2009. Thus, the following threshold question must be answered: for the purposes of the first-to-file rule, does an amended complaint that names a new party relate back to the original filing date?

This case involves patent infringement, and the Federal Circuit Court of Appeals has exclusive jurisdiction of final decisions in patent infringement cases. 28 U.S.C. § 1295. Therefore, to answer the threshold question posed above, this Court must determine whether to apply the law of the Sixth Circuit or the Federal Circuit. The Federal Circuit applies the procedural law of the regional circuit in matters that are not unique to patent law. *Allen Organ*

5

*Co. v. Kimball Int'l, Inc*., 839 F.2d 1556, 1563, (Fed. Cir. 1988). However, the Federal Circuit has also held that the

> question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits.

*Genentech v. Eli Lilly & Co*., 998 F.2d 931, 937 (Fed. Cir. 1993). In *Genentech*, the Federal Circuit rejected the application of the rigid rule of *Tempco Electric Heater Corp. v. Omega Engineering, Inc*., 819 F.2d 746 (7th Cir. 1987), which held that an action for declaration of noninfringement of a trademark should give way to a later-filed suit for trademark infringement, to patent cases. *Genentech*, 998 F.2d at 937. Citing a need to ensure national uniformity in patent practice, the Federal Circuit instead adopted "the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Id.*

The rule from *Genentech*, however, does not directly address the inquiry as to whether Federal Circuit law applies to the threshold question presented in this case. It is true that the question of whether an amended complaint that adds a party relates back to the date of the original complaint filing for the purposes of the first-to-file rule is certainly not unique to patent law, but is rather a procedural question of general applicability. However, the primary lesson from *Genentech* is that the Federal Circuit should apply, or create, if necessary, its own body of law when necessary "to avoid creating opportunities for *dispositive differences* among the regional circuits." *Genentech*, 998 F.2d at 937 (emphasis added). The question posed in this case is dispositive: if the law of the Sixth Circuit dictates that an amended complaint does not relate back to its original filing date, no further first-to-file analysis would be necessary, because

6

Defendants would no longer be able to claim first-to-file status, at least in this Court. What could potentially result, however, is the Iowa court, which must apply the law of the Eighth Circuit, holding otherwise. The potential resulting situation, with two simultaneous lawsuits trying similar issues in different districts, is untenable and is exactly the situation the first-to-file rule seeks to avoid. Therefore, this Court finds the threshold question posed by this case implicates the Federal Circuit's "mandate to promote national uniformity in patent practice" and this Court shall look to Federal Circuit law to answer it.

This Court has been unable to locate any Federal Circuit precedent directly answering the threshold question, nor has either of the parties provided such authority. Indeed, the "Federal Circuit has not expressly stated a view as to whether, in patent cases, the first-to-file rule applies only where the concurrent actions at issue involve identical parties." *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 408 (E.D. Pa. 2008). Thus, "when deciding patent matters based upon particular aspects of the first-to-file rule on which the Federal Circuit has been silent, district courts look to understandings of the doctrine as developed generally in the federal courts." *Id.*

In *Shire*, the court was confronted with a nearly identical scenario to the one presented here. There, a patent holder sued a manufacturer for patent infringement in the Eastern District of Texas. A short time later, a non-party to the Texas action instituted an action for declaratory relief related to the same patent against the patent holder in Pennsylvania. Subsequently, the patent holder amended its complaint to include the non-party in the Texas action, and filed a motion to dismiss the Pennsylvania declaratory relief lawsuit. The court in *Shire* held "the timing of the addition of Shire [the former non-party] as a party to the Texas suit is not material to the determination of which action was first-filed [because] the substantive

7

touchstone of the first-to-file inquiry is *subject matter*." *Id.* at 409 (emphasis added). And therefore, the court held that the Texas action was first in time and, after determining that no exceptions to the first-to-file rule applied, dismissed the Pennsylvania declaratory judgment lawsuit.

*Shire* is not an outlier case. Indeed, the principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it" is well-established, and by no means new. *Smith v. M'Iver*, 22 U.S. (9 Wheat.) 532, 535 (1824). A review of more recent decisions reveals that the critical inquiry for first-to-file purposes is which court "first obtains possession of the subject of the dispute, not the parties of the dispute." *Advanta Corp. v. Visa U.S.A., Inc.*, No. 96-7940, 1997 U.S. Dist. LEXIS 2007, at *3 (E.D. Pa. Feb. 19, 1997). *See also Whelan v. United Pac. Indus.*, No. 02-2519, 2002 U.S. Dist. LEXIS 21827, at *2 (E.D. Pa. Nov. 1, 2002) (holding that "although plaintiffs argue that the California complaint failed to name the patent owners as parties to the declaratory judgment action, such an easily correctable oversight does not prevent this Court from deferring to the first-filed suit"); *Barber-Greene Co. v. Glaw-Knox Co.*, 239 F.2d 774, 778 (6th Cir. 1957) ("'When two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill is treated [. . .] as authorized to proceed with the cause.'") (quoting *Penn Gen. Cas. Co. v. Commonwealth of Pa.*, 294 U.S. 189, 196 (1935)); *National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, No. 97-3105, 1997 U.S. Dist. LEXIS 16734, *1-2 (E.D. Pa. Oct. 29, 1997) (applying first-to-file rule even though defendant not named in initial complaint because the defendant "should have known that but for a mistake concerning the identity of the proper party, the initial complaint would have been brought against it").

Examining the complaint in this case and the original and the second amended complaint in the Iowa litigation, it is readily apparent that the subject matter of the two lawsuits is identical. In this Court, Horton Archery seeks a declaration that it does not infringe the '921 patent, or alternatively that the '921 patent is invalid. This exact issue is before the Iowa court, where the plaintiffs' (Defendants here) first cause of action alleges infringement of the '921 patent by Horton Archery. Horton Archery readily acknowledges this reality, but argues that the declaratory judgment action before this Court is the first-filed action because Horton Archery was not named as a defendant in the Iowa litigation until after the Ohio litigation was filed, and alternatively because the second amended complaint in the Iowa litigation "alleg[es] so little against Horton Archery" and the second amended complaint "demonstrates both that (1) [Defendants] regard[] Horton Archery as a distinct business entity from Horton Manufacturing, and that (2) [Defendants] understand[] that different facts must be presented to support the contentions against Horton Manufacturing than the contentions against Horton Archery." (Doc. No. 15 at p.7.) These arguments are without merit, and irrelevant, respectively. As discussed in the preceding paragraphs, it is the court which first has possession of the *subject matter* of the lawsuits that is the first-filed court. And even assuming *arguendo* that Horton Archery's contentions regarding the distinctness of it and Horton Manufacturing and that "different facts" are necessary to support the allegations against the two entities, whether or not the '921 patent has been infringed, or is invalid, is the touchstone subject matter of both of these lawsuits. And the Iowa court certainly and without question was the first court to have possession of that issue. Therefore, the Iowa litigation was first-filed.

2. **Exceptions to the First-to-File Rule**

Having determined that the Iowa litigation was first-filed and involves the identical parties presently before this Court, and that the issues before the two courts involve the identical primary issue of the '921 patent, the Court next must determine whether it should exercise its discretion to dispense with the rule for equitable reasons or because special circumstances warranting an exception are present. The Federal Circuit has recognized two exceptions to the first-to-file rule, the customer-suit exception and a discretionary determination based on the convenience and suitability of competing forums. *See Tegic Comm'ns. Corp. v. Bd. of Regents*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (discussing customer-suit exception); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008) ("The trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums [. . .] when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a).").

a) **The Customer-Suit Exception**

Under the customer-suit exception, a later-filed manufacturer declaratory suit takes priority over earlier-filed infringement suits against the manufacturer's customers. This exception plainly does not apply to this case. "At the root of the preference for a manufacturer's declaratory judgment is the recognition that, in reality, the manufacturer is the true defendant in the suit." *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)). The Iowa suit, as amended and it exists now, includes the "true defendant," Horton Archery. Moreover, the relationship between Horton Manufacturing, the original named defendant in the Iowa litigation,

and Horton Archery is not the type of manufacturer-customer relationship that the customer-suit exception is designed to protect.

b) **Convenience and Suitability of Competing Forums**

"The general rule favors the forum of the first-filed action, whether or not it is a declaratory action. Exceptions, however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech*, 998 F.2d at 937. "There must, however, be sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.* "The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure the case receives attention in the most appropriate forum." *Micron Tech.*, 518 F.3d at 905.

An examination of the convenience factors in this case reveals that the Southern District of Iowa is the more appropriate forum for this dispute. Horton Archery argues that its employees, the "manufacturing witnesses," are located in the Northern District of Ohio, along with documents and records from the company. While this is surely true, any convenience benefit to Horton Archery would be equaled by the inconvenience to Defendants, whose witnesses and records are located in Iowa. Moreover, the patent was invented in Iowa, and the marketing and sale of the allegedly infringing products occurred in that state. Furthermore, the resolution of the Iowa litigation, which includes several tort claims along with the claim for patent infringement, will necessarily address each issue presented to this Court, while the converse is not true. If this case proceeded to judgment, the outstanding claims in Iowa would still need to be resolved, and needlessly duplicative litigation is a highly inefficient result that is not in the best interests of justice. Furthermore, this case is highly atypical of most first-to-file

11

issues in that the substantive infringement action was filed before the declaratory relief action. *Cf. Micron Tech*, 518 F.3d at 900 (declaratory relief action filed the day before infringement action). Therefore, the Court concludes that there is no "sound reason that would make it unjust or inefficient to continue the first-filed action" and declines to use its discretion to do so.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. This action is dismissed.

**IT IS SO ORDERED**.

Dated:   January 27, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**